# BERWIND-WHITE COAL MINING COMPANY

*v.*

# THE BORINQUEN SUGAR COMPANY.

San Juan, Equity, No. 897.

LEASE OF RECEIVERSHIP PROPERTY.

Receivership—Lease.

1. Where reorganization plans have fallen through, and all parties in interest make competitive propositions to lease the entire receivership property, the court will treat that plan as agreed to, and act accordingly.

Receivership—Temporary.

2. Receivership does not exist as an independent status of property. Its object is to keep the fund intact until normal conditions return.

Receivership of Sugar Central—Second Year.

3. Where a receiver is without money to cultivate for another crop, the court will direct him to lease the property to best advantage.

Lease—Creditors and Stockholders.

4. Where an offer is made by stockholders, and the bondholders follow with one of substantially the same terms, both sets of parties having the ability to carry out their propositions, the court will accept that first made.

Receivership—Lease by Receiver.

5. The court will not terminate a receivership by a lease, but direct the receiver to supervise the carrying out of such lease, and reserve the right to terminate the lease if the net proceeds are not sufficient to pay the interest accruing on the bonds.

Opinion filed January 6, 1914.

*Mr. Chas. Hartzell* for receiver.

Berwind-White Coal Min. Co. v. The Borinquen Sugar Co.

*Mr. Martin Travieso* for bondholders.

*Messrs. T. D. Mott, Jr., H. G. Molina,* and *H. H. Scoville* for the creditors.

HAMILTON, Judge, delivered the following opinion:

This court on July 1, 1913, rendered a decree authorizing the receiver to pass the interest, so to speak, of the bondholders until the end of the current crop; that is, to borrow enough money to develop the present crop, in hopes that the situation would then improve and some further disposition could be made of the property; and that has been the situation up to lately. The parties interested have very properly been trying to see what can be done in regard to the future. It seems that if something is not done, there will, as the receiver goes on with his cutting, be a distinct loss to the property. The future crop will be very much impaired; that is, the crop for another year. The nature of sugar cane seems to be that the rattoons for the second year must be attended to at practically the same time as the cutting of the crop for the current year.

1. One proposition was to reorganize the company. It has not come to the court officially what is the result, but it was stated in argument several times yesterday, and not disputed, that the parties have differed, and that the reorganization plan has practically fallen through. Moreover, both sides to that plan by making offers agree in effect that leasing is more practicable.

The unsecured creditors have presented a plan of lease, and the bondholders have followed within a few days with a somewhat similar plan; so that the court will have to assume that

there is nothing urgent, at all events, in any matter of reorganization, and consider what would be the best plan under the present circumstances.

The receiver has submitted to the court three plans, three offers of lease of the property, so as to cover these future crops. He does not recommend one or the other, and the court will have to pass upon the matter on its own responsibility, except that the receiver does not recommend the application of Mr. Roig. He says as to this that it is a perfectly proper application, but contemplates the abandonment of the factory, of the machinery of the company, and would work great injury in the course of the season from that very fact. The court will therefore not consider that proposition, as the others seem to present more favorable terms.

2. The first question to be considered is, What is the power of the court in the premises, or, rather, what is the rightful exercise of the power of the court? There is little question as to the power of the court in receiverships, so long as it conserves the property, but what appeals to the conscience of the court, of course, is, What is required, what is best for the property? That is the sole object of the receivership, to keep it in such an abnormal condition only until normal conditions return so that the property can either be disposed of to advantage, or all claims be satisfied and the property returned to the original owners. There is no other object in receiverships. A receivership does not exist as an independent status of any property. This court would never countenance any such theory.

3. The question then is, Having a receiver in control of the property, with enough money to operate it for one year, what should the court do with the property under circumstances

Berwind-White Coal Min. Co. v. The Borinquen Sugar Co.

which show that something has to be done for the ensuing crop? It would seem that there would be irreparable damage if something is not done, so that it looks to the court as if it is a matter of necessity to take some step. The same question might come up at the end of another season, but the court having resolved to keep things *in statu quo* until the end of this crop, it is compelled to take one step further, and keep things *in statu quo* for the crop of the next year, which would be lost unless something is done now. It is a question not of the court's seeking, but seems to be the necessity of the case. What, then, should be done? The receiver is without money to cultivate for the next crop, and here come propositions from two parties which will cover that situation. The court cannot and will not abandon the receivership by lease of the property. The only way it can come up is for the receiver to lease the property on what may be deemed advantageous terms, and himself supervise the performance of the lease.

4. Two propositions are presented which the court can consider. The first was presented by what we may call the unsecured creditors, Mr. Fabian and some others. I speak of them as the creditors. Within a few days there was then presented a somewhat similar proposition, with some changes, by the bondholders. I will speak of them as the bondholders. There seems to be a difference between counsel as to which party deserves credit for originating the plan. One says the plan was suggested by the bondholders before the master, and the other that it was first presented by the creditors to the court, and then copied by the bondholders. Both plans, however, are before the court. The question is, Which is more advantageous to the property and to the creditors as a whole?

Berwind-White Coal Min. Co. v. The Borinquen Sugar Co.

The bondholders offer some advantages,—for instance, the amount of money required for operation is shown to be deposited as cash in the bank. The creditors, however, say that they are willing to make the same deposit; and if we are to consider the second proposition at all, based as it is upon the first,—being an amendment and improvement of the first,—it is only fair to allow the first proposers to amend their proposition to conform to the second. The only difference therefore left, the two propositions being made the same, is as to the character of the men in question,—of the two sets of men making the two propositions. It is urged by the bondholders that they are business men who have never failed in any enterprise, and are men of wealth, and that the creditors, while men of standing, are the ones under whose management the property failed. It would seem that that should not control in this case. There is nothing to show that the creditors who made the first proposition are not of sufficient business ability to carry on this property for the one or two seasons as proposed. It is to their vital interest to succeed, for they get nothing if they do not succeed. There is no reason for taking a second proposition if the first one is satisfactory. Where there is no difference in the propositions, the first definite offer to the court should be accepted.

Upon the whole the court thinks that it should accept the first proposition which is made, that is, of the creditors, the terms being made, in whatever lease may be written, identically the same and as advantageous as in the second proposition.

5. The court will therefore direct the receiver to make a lease with the creditors, that is to say, Mr. Fabian *et al.,* and

Berwind-White Coal Min. Co. v. The Borinquen Sugar Co.

report the same for confirmation, embracing in it also these provisions,—in the first place, everything more advantageous that is found in the proposal of the bondholders, if there be any, in the second place, to show that this is a receivership matter, that the property is not abandoned to any outsider, or to any creditor even, the lease is to be carried on under the supervision of the receiver. He is to visit the property from time to time, and to see that the terms are all carried out. In the third place, this lease is to be made without prejudice in any way to any plan of reorganization, if one should develop. It is subject to that contingency. And furthermore, this fourth provision, which was not mentioned on one side or the other. The court is very anxious that the interest of the bondholders be secured. It exercised the power that it has to defer the income of the bondholders for a season in the general interest of the whole property. It is not disposed to keep up that policy for a great length of time, and therefore there is to be a provision in the lease that unless the property nets the receiver a minimum of whatever is necessary to pay the current interest, the court reserves the right, on reasonable notice, to cancel the lease.

It seems to the court that in this way it is giving the common creditors the handling of the property, which they are possibly most interested in handling, inasmuch as, if it is not handled well, they will get nothing, and at the same time it will be securing the rights of the bondholders by providing, so far as the court can provide, that enough money is made to pay the interest on the bonds. The receiver will act accordingly.